# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | |
|---|---|
| **OLIVIA DAVIS, et al.,** } | |
| } | |
| Plaintiffs, } | |
| } | |
| v. } | Case No.: 7:04-CV-2527-RDP |
| } | |
| **NPC PIZZA HUT,** } | |
| } | |
| Defendant. } | |

## MEMORANDUM OPINION

**I.   INTRODUCTION**

This race discrimination case filed by Plaintiffs Olivia Davis, Eddie Davis, and Tammy Taylor ("Taylor") arises out of a promotion decision made by Defendant NPC International, Inc. ("NPC") in August 2003. (Doc. #21).[1] Pending before the court is NPC's Motion for Summary

---

[1] Plaintiffs' Amended Complaint, filed on January 19, 2005, references both Title VII and § 1981 as the statutory bases for their race discrimination claim. While the language of the Amended Complaint generally refers to racial discrimination by Defendant "by compelling them [*i.e.*, Plaintiffs] to work in a hostile work environment as well as engaging in discriminatory employment practices" (Doc. #21 ¶ 1), the attached EEOC administrative documents specifically reference the August 2003 promotion decision. Similarly, the parties' briefs and evidence focus on the August 2003 employment decision. Accordingly, it appears to the court that Plaintiffs are only challenging Defendant's failure to promote them. In any event, to the extent that the Amended Complaint could be read to include any claims beyond the August 2003 promotion decision, Plaintiffs have abandoned them. *See, e.g.*, *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1322 (11th Cir. 2001) (finding claim abandoned when argument not presented in initial response to motion for summary judgment); *Bute v. Schuller International, Inc.,* 998 F. Supp. 1473, 1477 (N.D. Ga. 1998) (finding unaddressed claim abandoned); *see also Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) (failure to brief and argue issue at the district court is sufficient to find the issue has been abandoned); *Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir. 1995); *Hudson v. Norfolk Southern Ry. Co.,* 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001). *Cf. McMaster v. United States,* 177 F.3d 936, 940-41 (11th Cir. 1999) (claim may be considered abandoned when district court is presented with no argument concerning a claim included in the plaintiff's complaint); *Road Sprinkler Fitters Local Union No. 669 v. Independent Sprinkler Corp.,* 10 F.3d 1563, 1568 (11th Cir. 1994) (concluding that a district court "could properly treat as

Judgment (Doc. #39) filed on April 17, 2006. Plaintiffs filed their opposition (Doc. #41) on May 8, 2006. After obtaining an extension of time, NPC filed its reply (Doc. #43) on May 26, 2006. As discussed in detail below, the court concludes that there are no material factual disputes and that NPC is entitled to judgment as a matter of law. Accordingly, NPC's Motion for Summary is due to be granted.

## II.   FACTS[2]

NPC is a franchisee of Pizza Hut restaurants. AF No. 1. Each NPC restaurant employs one Restaurant General Manager ("RGM") (also known as a store manager) who is responsible for the daily operations of the restaurant he/she manages. AF No. 2. RGMs report to an Area General Manager ("AGM"), who is responsible for overseeing the operations of all NPC restaurants within that AGM's assigned area. AF No. 3. Each AGM supervises between seven and ten restaurants. AF No. 3. Plaintiffs are all RGMs at NPC restaurants in the "area" NPC designates as the

---

abandoned a claim alleged in the complaint but not even raised as a ground for summary judgment"). In addition, as Plaintiffs have not disputed the fact that the only promotion claim properly before the court was filed under Title VII only, (*Compare* Def's. Memo. in Support of Mot. Summ. J. at n. 7, SOF ¶ 18, p.10 *with* Pl's. Resp. at Statement of Facts ¶¶ § 14-16) Plaintiffs have also abandoned any claim under 42 U.S.C. § 1981.

[2]The court notes that Plaintiffs have offered their own statement of facts without chronologically responding to those outlined by NPC. However, some of the facts identified by Plaintiffs in their opposition as admitted mirror those offered by NPC. Therefore, the following statement of facts is based upon a review and comparison of the facts included in Doc. #40, Doc. #41, and Doc. #43 as well as the evidentiary record on summary judgment. Whenever Plaintiffs have adequately disputed a fact offered by NPC, the court has accepted Plaintiffs' version. The court's numbering of admitted facts (*e.g.*, AF No. 1) corresponds to the numbering of NPC's Statement of Facts as set forth in Doc. #40 and responded to by Plaintiff in Doc. #41. Similarly, the designation "AAF" stands for additional admitted fact and corresponds to Plaintiffs' Statement of Facts contained in Doc. #41 and responded to by NPC in Doc. #43. Any other facts referenced by the parties that require further clarification are dealt with later in the court's opinion.

Tuscaloosa area and are related to each other; Olivia Davis is Eddie Davis' mother and Tammy Taylor is the live-in girlfriend of Eddie Davis. AF No. 5.

Plaintiff Olivia Davis commenced her employment with NPC on April 15, 1982, and was promoted to RGM on May 1, 1996. AF No. 6. That was Olivia Davis' fifth promotion since starting her employment. AF No. 6. Plaintiff Eddie Davis commenced his employment with NPC on December 13, 1998, and was promoted to RGM in October 2002. AF No. 7. That was Eddie Davis' second promotion since starting his employment. AF No. 7. Plaintiff Taylor commenced her employment with NPC in September 1998, and was promoted to RGM on June 21, 2005. AF No. 8. That was Taylor's fourth promotion since starting her employment. AF No. 8. All of the Plaintiffs are African-American and therefore belong to the same protected class. AF No. 18. They all claim NPC discriminated against them based upon their race when it failed to promote them to an AGM position in August 2003. That position was awarded to Paula Stanford ("Stanford"), a white employee who also worked for NPC.

An AGM's responsibilities include (1) ensuring the overall profitability of all the restaurants they manage; (2) maintaining proper staffing; and (3) ensuring that all employees meet company standards. (Doc. #40 at Ex. 2 ¶ 15). The primary job function of an AGM is to manage multiple restaurants. (Doc. #40 at Ex. 2 ¶ 16). The selection criteria for internal candidates to be promoted from RGM to AGM is outlined on NPC's Area General Manager Selection Criteria document, which explains that to be promoted to AGM an RGM should have: (1) over two years of experience as an RGM; (2) pass a background check; (3) earned at least a meets expectations ("ME") on the last two

performance evaluations; (4) completed Expert, LAS, BMT, HIC and NPC Admin Modules;[3] (5) completed Leading Multiple Restaurants Training; (6) earned at least twenty-four points on NPC's Leadership Competencies Evaluation; and (7) demonstrated the ability to perform at least twenty of the tasks listed on NPC's Readiness Checklist for RGM to AGM.  (*See* NPC's Area General Manager Selection Criteria document, Doc. #40 at Ex. 8; Ex. 2 ¶ 17).

NPC maintains a "bench planning process," which is the process by which AGMs, Regional Managers, and Human Resource Leaders communicate with one another and identify the personnel needs, such as employee training, hiring, and promotion, of each NPC restaurant.  AF No. 10.  NPC relies on the bench planning process and the regular contact of AGMs and Human Resources Leaders with RGMs (and other members of a restaurant's staff) to determine who is "bench ready" for promotion and who desires to be promoted. (Doc. #40 at Ex. 2 ¶ 14; Ex. 7 p. 62 at 16-21).  NPC has no written procedure in place to ensure that any interested employees may know what position(s) are available and when they have become available for job interviews.  AAF No. 46.

Before Stanford was promoted, the AGM was Ken Dunnington ("Dunnington").  On June 4, 2003, Eddie Davis and Olivia Davis attended a meeting conducted by Fred Schlimm ("Schlimm"), NPC's Regional Manager, where they were informed that Dunnington, their AGM, had been terminated, and they did not have an AGM. (Doc. #40 at Ex. 3 p. 145; Ex. 4 p. 42; Aff. of Fred Schlimm at ¶ 4).  Taylor learned of Dunnington's termination one week after his termination. (Doc. #40 at Ex. 6 pp. 53, 54).  None of Plaintiffs were identified as promotable to the AGM position on any bench planning worksheet or during any of the monthly bench planning meetings that Fred

---

[3]The NPC Admin Module was not available in 2003 and still is not available.  Thus, this requirement is waived by NPC for all candidates.

Schlimm, Regional Manager, held with Sherry Davis, the Human Resources Leader, and Ken Dunnington, the former AGM. (Doc. #40 at Ex. 9 ¶ 9). In addition, Schlimm had no idea any of the Plaintiffs desired the position, and none of them told Schlimm they wanted to be promoted to AGM.[4] (Ex. 9 at ¶ 10; Ex. 4 p. 44-45; Ex. 6 p. 38, p. 40; Ex. 3 p. 146). In fact, neither Eddie Davis nor Olivia Davis had told anyone they desired to be promoted. (Ex. 4 p. 44-45; Ex. 3 p. 147 at 7-17).

Schlimm chose Stanford to be the new AGM for the Tuscaloosa area in late July 2003, and she was formally promoted in August 2003. (Doc. #40 at Ex. 9 at ¶ 5). Stanford had been an RGM in the Birmingham Area since 2002, had performed well in that capacity, and had expressed an interest in the AGM position from the time she was hired. (Doc. #40 at Ex. 9 at ¶¶ 6, 8). During her tenure as an RGM for NPC, Stanford completed all of the tasks NPC requires of internal candidates desiring promotion to AGM, including completing Leading Multiple Restaurants ("LMR") training.[5] (Doc. #40 at Ex. 9 at ¶ 7). Even before she began working for NPC, Stanford was already qualified to be an AGM because she had been an RGM for Lee's Famous Recipe for three years, had managed multiple restaurants for Lee's Famous Recipe for nearly ten years, and had also owned and managed several restaurants herself. (Doc. #40 at Ex. 9 at ¶6).

---

[4]Plaintiffs have argued that "Dunnington expressed to Fred Schlimm, by bench plan, his promotable employees, which would include the Plaintiffs." *See* Plaintiffs' Response to Defendant's Motion for Summary Judgment at 7, ¶ 31. However, a close examination of the exhibits to Dunnington's deposition makes clear that the bench plans introduced at the deposition do not indicate Plaintiffs were promotable at the time those plans were written. Olivia Davis was never identified on any of the bench plans as promotable at all, and Eddie Davis and Tammy Taylor were not identified as promotable <u>to AGM</u>. (Doc. #41 at Ex. 7, Pl's. Ex. 2, which contains the bench plans).

[5]Although Plaintiffs have asserted Stanford did not receive LMR training, they have failed to put forward substantial evidence that is so. The only evidence they have placed into the Rule 56 record is Eddie Davis' affidavit testimony that Stanford and he were in the same "BMT class." (Doc. #41 at Ex. 2 ¶ 8). That testimony is simply not substantial evidence that creates an issue of fact for a jury to decide.

Schlimm chose Stanford to be the AGM because of her performance record, her past experience managing multiple restaurants, and because she had completed all of the tasks internal candidates are asked to complete before being promoted to AGM. (Doc. #40 at Ex. 9 at ¶ 7).

### III.    STANDARD OF REVIEW

Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R .Civ. P. 56(c). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). To warrant the entry of summary judgment, the moving party must demonstrate that "there is no genuine issue as to any material fact." *HCA Health Servs. of Ga., Inc. v. Employers Health Ins. Co.*, 240 F.3d 982, 991 (11th Cir. 2001). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

A plaintiff in an employment discrimination case maintains the ultimate burden of proving that the adverse employment decision was made because of intentional discrimination. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509-12 (1993); *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1184 (11th Cir. 1984). Although the Supreme Court previously established the basic allocation of burdens and order of proof in a disparate treatment case, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981), as modified by *Desert Palace v. Costa*, 539 U.S. 90 (2003), that allocation scheme applies only in cases where there is no

direct evidence of discrimination. *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 595 (11th Cir. 1987).

IV.   **ANALYSIS**

    A.   **Legal Background**

The analysis of Plaintiffs' failure to promote claim relates not only to the nature of the allegations but also the type of evidence offered in support of those claims. *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998) (noting that "[t]he analytical framework and burden of production var[y] depending on the method of proof chosen"). In general, a plaintiff may attempt to establish a claim of employment discrimination through the use of direct evidence,[6] circumstantial evidence, or statistics. *Id.; see also Schoenfeld v. Babbitt*, 168 F.3d 1257, 1266 (11th Cir. 1999) (recognizing the availability of either direct or circumstantial evidence). Providing a plaintiff with the opportunity to establish discrimination through the use of circumstantial evidence of discrimination is important because direct proof of discrimination is uncommon. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1537 (11th Cir. 1997); *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 595 (11th Cir. 1987).

Here, Plaintiffs assert there is circumstantial evidence of racial discrimination. "In evaluating [discrimination] claims supported by circumstantial evidence, [the courts of this circuit] use the now-familiar framework established by the United States Supreme Court in *McDonnell Douglas Corp.*

---

[6] Direct evidence is "[s]uch evidence [which], if believed, proves the existence of a fact in issue without inference or presumption." *Burns v. Gadsden State Community College*, 908 F.2d 1512 (11th Cir. 1990); *see Wright v. Southland Corp.*, 187 F.3d 1287, 1293-94 (11th Cir. 1999) (Tjoflat, J.) (defining direct evidence as "evidence from which a reasonable trier of fact could find, more probably than not, a causal link between an adverse employment action and a protected personal characteristic" and finding the outcomes reflected in prior case law consistent with that definition).

*v. Green*, 411 U.S. 792 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981)." *Combs*, 106 F.3d at 1527 (parallel citations omitted). Under the *McDonnell Douglas* and *Burdine* framework, the plaintiff first has the burden of establishing a *prima facie* case of discrimination, which creates a rebuttable presumption that the employer acted illegally. *See id.* at 1527-28. The methods of presenting a *prima facie* case, as well as the exact elements required for such a showing, are not fixed; rather, they are flexible and depend to a large degree upon the facts of the particular decisions at issue. *See, e.g., Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1185 (11th Cir. 1984); *Lincoln v. Board of Regents of Univ. Sys.*, 697 F.2d 928, 937 (11th Cir. 1983). One of the methods a plaintiff may use to establish a *prima facie* case of disparate treatment employment discrimination is to show that she was a qualified member of a protected class and was subjected to an adverse employment action but that otherwise similarly situated employees outside the plaintiff's class were treated dissimilarly.[7] *McDonnell Douglas*, 411 U.S. at 802 (hiring); *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (discipline); *see also Nix*, 738 F.2d at 1185 (discipline).

Once the plaintiff has established a *prima facie* case and, thereby, raises the presumption of discrimination, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *Combs*, 106 F.3d at 1528. The employer "need not persuade the court that it was actually motivated by the proffered reasons." *Burdine,* 450 U.S. at 254-55; *see Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc). Indeed, "the defendant's burden of rebuttal is exceedingly light. . . . At this stage of the inquiry, the defendant

---

[7] *See also McDonnell Douglas*, 411 U.S. at 802 n.13 ("The facts necessary will vary in Title VII cases, and the specification above of the *prima facie* proof required from respondent is not applicable in every respect in different factual situations.").

need not persuade the court that its proffered reasons are legitimate; the defendant's burden is merely one of production, not proof." *Cooper v. Southern Co.*, 390 F.3d 695, 725 (11th Cir. 2004) (citation and internal quotation omitted). "If such a reason is produced, a plaintiff then has the ultimate burden of proving the reason to be a pretext for unlawful discrimination." *Denney v. City of Albany*, 247 F.3d 1172, 1183 (11th Cir. 2001). In addition, when the defendant articulates multiple, reasonable, legitimate and nondiscriminatory reasons, the plaintiff must rebut each of defendant's proffered reasons. *Chapman*, 229 F.3d at 1024-25. Although the fact that a plaintiff established a *prima facie* case becomes irrelevant once the employer has offered a legitimate reason for its actions, the evidence of pretext may include the same evidence offered to establish the *prima facie* case. *Combs*, 106 F.3d at 1528.

Despite this shifting of the burden of production between the plaintiff and the defendant under the *McDonnell Douglas* and *Burdine* framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine*, 450 U.S. at. 253. A plaintiff may defeat a summary judgment by producing sufficient evidence to allow a rational trier of fact to disbelieve the employer's proffered legitimate reasons, thus permitting but not compelling the trier of fact to make a finding of illegal discrimination. *Reeves*, 530 U.S. at 148-49 (pointing out the production of the necessary sufficient evidence by plaintiff will not always prevent the employer from prevailing on a Rule 50 motion and suggesting that the strength of plaintiff's *prima facie* case, the probative value of the proof that the employer's explanation is false, and any other properly considered evidence that supports the employer's case are among the factors the court should take into account in evaluating a Rule 50 motion); *see also St. Mary's Honor Ctr.,* 509 U.S. at 524; *Abel v. Dubberly*, 210 F.3d 1334, 1339

(11th Cir. 2000); *Alexander v. Fulton County*, 207 F.3d 1303, 1336 (11th Cir. 2000); *Combs*, 106 F.3d at 1529-38 (interpreting *Hicks* and the post-*Hicks* case law); *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 920-21 (11th Cir. 1993).

In support of its summary judgment position, NPC asserts that Plaintiffs have not established a *prima facie* case of failure to promote and that, in any event, Plaintiffs have not sufficiently rebutted its legitimate non-discriminatory reasons for selecting the incumbent, Paula Stanford, for the position of AGM. For the reasons discussed below, the court agrees that NPC is entitled to summary judgment.

### B.     Plaintiffs Cannot Establish a *Prima Facie* Case

NPC asserts that Plaintiffs are unable to establish a *prima facie* case of racial discrimination with respect to their promotion claims for two reasons. First, NPC argues that Plaintiffs did not express an interest in the position at issue. Second, NPC notes that Plaintiffs were not eligible for consideration for promotion to the position because they were not qualified for it.

#### 1.     Plaintiffs Did Not Express an Interest in the Position

Plaintiffs have all admitted in their depositions that they knew the AGM position was available.[8] (AF Nos. 19, 20). Nevertheless, Olivia and Eddie Davis testified in their depositions that

---

[8] Plaintiffs' affidavit testimony to the contrary–presented after they gave sworn statements in their depositions–is wholly unavailing and cannot "impeach" their prior and inconsistent sworn testimony. *See Van T. Junkins & Assoc. Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984) ("[A] party cannot . . . create . . . an issue [of fact] with an affidavit that merely contradicts, without explanation, previously given clear testimony.") Plaintiffs cannot rely on affidavit testimony that is directly contradicted by their deposition testimony. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234 n. 7 (11th Cir. 2003) ("Under the law of this Circuit, we may disregard an affidavit submitted solely for the purpose of opposing a motion for summary judgment when that affidavit is directly contradicted by deposition testimony.") (citing *Van T. Junkins*, 736 F.2d at 657). Here, Plaintiffs have not proffered a sufficient explanation for their subsequent, contradictory affidavit testimony.

they *never* told anyone they desired the promotion to the 2003 AGM position (AF No. 23), and Taylor testified that she told her former AGM, Dunnington, a couple of times that she would like to have his job, and that she told Olivia Davis she would like to be an AGM. (Doc. #41 at Ex. 10 at 37, 38, 40). This proffered testimony, however, does not establish a material factual dispute about *Schlimm's* knowledge of Taylor's interest in the open AGM position during the Summer of 2003.[9] There is no evidence that Dunnington alerted Schlimm of Taylor's desire, and Taylor never testified that she expressed any other interest in the position at issue. Finally, the Rule 56 record shows that it is undisputed that none of the Plaintiffs ever expressed their desire to be promoted to the AGM position to Schlimm, the hiring manager. (AF No. 22).

Plaintiffs respond to NPC's evidence that they never applied for the position by noting that NPC did not have any formal application process or procedures in place. Plaintiffs are correct that proof of a formal application is not always required to establish a *prima facie* case of discrimination. However, because Plaintiffs did not apply for the position that Stanford received, they can only establish a *prima facie* case by showing (1) a clear policy of exclusion made it futile for them to apply, or (2) the company had a duty to consider them for the position. *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1560 (11th Cir. 1986). Plaintiffs have not made either showing.

---

[9]Moreover, a candidate who expresses an interest in a promotion must also be qualified for the position. As explained in more detail *infra*, the bench plan records attached to Dunnington's deposition transcript reflect that Olivia Davis was never identified as promotable and Eddie Davis and Tammy Taylor were not identified as promotable to AGM. (Doc. #41 at Ex. 7 at Bench Planning Worksheets).

Plaintiffs have neither pointed to a clear policy of exclusion nor offered any evidence tending to show that NPC had a reason or duty to consider them for the opening.[10] Schlimm testified that he had no knowledge that any of Plaintiffs desired a promotion to AGM and that none of them had ever been identified as promotable to the AGM position.[11] (Doc. #40 at Ex. 9 ¶ 10). In addition, consistent with Schlimm's testimony and the bench plan documents, Eddie Davis and Olivia Davis both testified that they had not told anyone at NPC they desired to be promoted. (Doc. #40 at Ex. 4 at 44-45; *id.* at Ex. 3 at 7-17). Therefore, because they knew of the opening but neither applied for the position nor expressed any interest in it, Plaintiffs cannot meet this *prima facie* case requirement.

### 2. Plaintiffs Were Not Qualified for the Position

The court finds Plaintiffs cannot establish a *prima facie* case for a second (and alternative) reason: they have not presented substantial evidence that they were qualified for the position at issue. More specifically, Plaintiffs have failed to show how they satisfy NPC's selection criteria for internal candidates to be promoted from RGM to AGM as outlined on NPC's Area General Manager Selection Criteria document. (Doc. #40 at Ex. 2 ¶ 17). The criteria are:

> (1) over two years of experience as an RGM; (2) pass a background check; (3) earn at least a meets expectations ("ME") on last two performance evaluations; (4) complete Expert, LAS, BMT, HIC & NPC Admin Modules; (5) complete Leading Multiple Restaurants ["LMR"] Training; (6) earn at least twenty-four points on NPC's

---

[10]To the contrary, the evidence shows that NPC had no reason to consider them because (1) they had not expressed any interest in the position to Schlimm, NPC's General Manager, and (2), regardless (and as explained more fully below), they were not qualified for the position based upon NPC's selection criteria for internal candidates to be promoted from RGM to AGM. (Doc. #40 at Ex. 8).

[11]Plaintiffs' affidavits do not create a material factual dispute as to whether they expressed any interest in the position because the statements contradict prior deposition testimony without adequately explaining the contradiction. *Van T. Junkins*, 736 F.2d at 657.

      Leadership Competencies Evaluation; and (7) demonstrate the ability to perform at least twenty of the tasks listed on NPC's Readiness Checklist for RGM to AGM.

*Id.*[12]

      Taylor did not satisfy the criteria because she did not have enough experience as an RGM — she had worked as an assistant manager until June 2005, and at the time of the job filling, had no RGM work experience. Similarly, Eddie Davis also did not have two years experience as an RGM. At the time of Stanford's selection, neither Olivia Davis nor the other Plaintiffs had completed LMR training or had experience managing more than one restaurant.

      Plaintiffs point to Della Lann (who was the AGM over the Fayette and Mississippi area) and note that she was promoted to AGM despite the fact that she had not received prior LMR training. However, Lann is not a suitable comparator. Unlike any of Plaintiffs, Lann was managing three restaurants at the time she was promoted to AGM in 1995. (Doc. #41 at Ex. 5 at 22-24). Moreover, the LMR training did not even exist at the time of her promotion. (*Id.*).

      In *Silvera v. Orange County School Bd.*, 244 F.3d 1253 (11th Cir. 2001), the Eleventh Circuit reiterated the standard for determining whether employees are similarly situated:[13]

---

[12] As noted by NPC in its brief, the NPC Admin. Module that is referenced in item (4) above was not available in 2003, and still is unavailable; therefore, this particular requirement was waived by NPC for all otherwise qualified candidates. (Doc. #40 at 6 n.6; *see also id.* at Ex. 2 ¶ 17).

[13] The court recognizes that *Silvera* involved allegations of discriminatory discipline, but the legal principles discussed in that opinion (and in other decisions of the Eleventh Circuit) regarding comparators still provide useful insight into the nature of the similarly situated standard to be applied in a promotion case. *See, e.g., Alexander v. Fulton County*, 207 F.3d 1303, 1347 (11th Cir. 2000) ("Similarly, with respect to the reassignment claim, Steele offered no evidence of a similarly situated black comparator who received a reassignment similar to the one he was denied."). *Cf. MacPherson v. Univ. of Montevallo*, 922 F.2d 766, 774 n.16 (11th Cir. 1991) ("In a comparator analysis, the plaintiff is matched with a person or persons who have very similar job-related characteristics and who are in a similar situation to determine if the plaintiff has been treated differently than others who are similar to him.").

> In determining whether employees are similarly situated for purposes of establishing a *prima facie* case, it is necessary to consider whether the employees are "involved in or accused of the same or similar conduct and are disciplined in different ways." *Jones v. Bessemer Carraway Med. Ctr.*, 137 F.3d 1306, 1311 (11th Cir.) (quoting *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir.1997)), *opinion modified by,* 151 F.3d 1321 (11th Cir.1998).

244 F.3d at 1259. In other words, to meet the comparability requirement, Plaintiffs must show that they are "similarly situated in *all relevant aspects* to the non-[protected category] employee." *Silvera*, 244 F.3d at 1259 (citing *Holifield*, 115 F.3d at 1562) (emphasis added). Plaintiffs are unable to show Lann is an appropriate comparator for at least three reasons: (1) temporally, the promotion decisions are eight (8) years apart and, therefore, are too distant from one another; (2) geographically, there is no evidence that the same decisionmaker, *i.e.,* Schlimm, was involved in both decisions; and (3) factually, Lann testified to having significant experience managing multiple restaurants while Plaintiffs had no equivalent job experience when the decision at issue in this case was made.

### C. Plaintiffs Cannot Show Pretext

Alternatively, the court concludes that even if Plaintiffs were able to establish a *prima facie* case with respect to their promotion claim (which they cannot), their claims nevertheless fail because they are unable to show pretext in NPC's decision to select Stanford for the AGM position. "[T]o avoid summary judgment [the plaintiff] must introduce significantly probative evidence showing that the asserted reason is merely a pretext for discrimination." *Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1228 (11th Cir. 1993) (citation omitted). A reason is not pretext for discrimination "unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993). In the context of challenging a promotion:

> [A] plaintiff cannot prove pretext by simply arguing or even by showing that he was better qualified than the officer who received the position he coveted. A plaintiff

must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by race. We have explained, a plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reasons, at least not where . . . the reason is one that might motivate a reasonable employer.

*Alexander v. Fulton County*, 207 F.3d 1303, 1339 (11th Cir. 2000) (internal quotations omitted).

Here, the court readily concludes that NPC's proffered reasons–Stanford's superior qualifications and experience–were legitimate and non-discriminatory in nature. Thus, the burden shifted to Plaintiffs to "meet [the proffered] reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Chapman v. AI Transp.*, 229 F.3d at 1030 (discussing ADEA claim). A plaintiff must show that the disparities between the successful applicant's and her own qualifications were "of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff." *Cooper v. Southern Company*, 390 F.3d 695, 732 (11th Cir. 2004), *cert. denied*, ___ U.S. ___, 126 S. Ct. 478 (2005) (citation omitted); *see also Ash v. Tyson Foods, Inc.*, ___ U.S. ___, 126 S. Ct. 1195, 1197 (2006) (*per curiam*) (approving of this language from *Cooper*). According to Schlimm, the undisputed final decisionmaker,[14] Stanford had nearly three years prior experience as an RGM for Lee's Famous Recipe ("Lee's"), had been an RGM for NPC in the Birmingham area since 2002 (and had performed well in that capacity), and had expressed an interest in the AGM position. (Doc. #40 at Ex. 9 ¶¶ 6, 8). Stanford satisfied all the internal candidate criteria, including

---

[14]*See* Doc. #40 at Ex. 9 ¶ 5.

15

completion of the Leading Multiple Restaurants training.[15] (*Id.* ¶ 7). As already explained, Plaintiffs had not.

Schlimm selected Stanford to fill the open AGM position because of her past performance record, her prior experience managing multiple restaurants,[16] and her completion of all NPC internal candidate requirements. (*Id.*) Therefore, the court is not faced with a situation in which Plaintiffs are claiming (or are able to claim) that their qualifications are so superior to those of Stanford such that the disparities in employment records establish pretext. *See, e.g., Patterson v. McLean Credit Union*, 491 U.S. 164, 187-88 (1989) ("[A plaintiff] might seek to demonstrate that respondent's claim to have promoted a better qualified applicant was pretextual by showing that she was in fact better qualified than the person chosen for the position."), *superseded on other grounds by* 42 U.S.C. § 1981(b); *Burdine*, 450 U.S. 248, 259 ("The fact that a court may think that the employer misjudged the qualifications of the applicants does not in itself expose him to Title VII liability, although this may be probative of whether the employer's reasons are pretexts for discrimination.").

Moreover, Plaintiffs have not offered any evidence that would tend to show that Schlimm's decision was somehow tainted by racial bias. For example, Plaintiff does not contend that Schlimm

---

[15]As already noted, Plaintiffs attempt unsuccessfully, through the affidavit of Eddie Davis, to create a material factual dispute over whether Stanford had completed LMR Training. However, Eddie Davis, unlike Schlimm, is without any personal knowledge as to this particular subject matter area, and regardless, his testimony does not specifically state that Stanford lacked this training. (Doc. #41 at Ex. 2). Furthermore, Plaintiffs' citations to Dunnington's deposition do not contain testimony that he created a "bench plan for promotion" for Olivia Davis, and the bench plan documents do not identify Olivia Davis as promotable. (Doc. #41 at Ex. 7 p. 64; 15-20, pp. 65-77; Pl's Ex. 2).

[16]This multiple restaurant management experience included nearly three years working as an RGM for Lee's, ten years managing multiple restaurants for Lee's, and some additional time owning and managing several restaurants herself.

made any derogatory comments or jokes that would otherwise potentially demonstrate a bias against promoting African-American employees. *See, e.g., Ash*, 126 S. Ct. at 1197 ("First, there was evidence that Tyson's plant manager, who made the disputed hiring decisions, had referred on some occasions to each of the petitioners as 'boy.' Petitioners argued this was evidence of discriminatory animus."). Instead, Plaintiffs' primary point in opposing summary judgment seems to be that their tenure at NPC meant that they deserved a promotion to AGM. However, this is insufficient to show pretext. As the Eleventh Circuit stated succinctly and unequivocally in *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466 (11th Cir. 1991):

> Federal courts "do not sit as a super-personnel department that reexamines an entity's business decisions. No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, the ADEA [, Title VII, or § 1981] does not interfere. Rather, our inquiry is limited to whether the employer gave an honest explanation of its behavior." *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359, 1365 (7th Cir. 1988) (citations omitted).

*Id*. at 1470; *see also Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999) ("We are not in the business of adjudging whether employment decisions are prudent or fair. Instead, our sole concern is whether unlawful discriminatory animus motivates a challenged decision.") (citation omitted), *cert. denied*, 529 U.S. 1109 (2000).

Quite simply, Plaintiffs have not met their burden under *Cooper* to show that the disparities between their qualifications and Stanford's qualifications were so severe that no reasonable person could have chosen Stanford over them. *See Brooks v. County Commission of Jefferson County*, 446 F.3d 1160, 1163 (11th Cir. 2006) (affirming summary judgment on promotion claim and also noting that, in *Ash*, the Supreme Court approved the language in *Cooper*). Indeed, Plaintiffs have offered *no* evidence to challenge NPC's evidence that Stanford was hired based on her past performance

record, her prior experience managing multiple restaurants, and her qualifying for the position based upon her completion of all NPC requirements for the position. This "inquiry at the third stage of the *McDonnell Douglas* analysis of a promotion discrimination claim is not concerned with [Plaintiffs'] belief that [they were] equally or more qualified *or* whether we could conclude that [Plaintiffs were] better qualified than [Stanford]." *Brooks*, 446 F.3d at 1163-64; *see Cooper*, 390 F.3d at 744 (noting plaintiff's reliance on her own belief that she was better qualified than promotee and observing that "whether we could conclude [the plaintiff] was better qualified than [the promotee] is not the issue here"). For these reasons, Plaintiffs are unable to meet their burden on summary judgment of demonstrating pretext in NPC's selection of Stanford over them for the AGM position.

## V.  CONCLUSION

As explained above, NPC has shown that no material factual disputes exist and that it is entitled to judgment as a matter of law. Accordingly, summary judgment in favor of NPC is due to be entered. The court will enter an order consistent with this Memorandum Opinion.

**DONE** and **ORDERED** this \_\_\_\_22nd\_\_\_\_ day of August, 2006.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE